UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAMELA DAVIS EVANS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 2:06-CV-01072-LSC |
| | ] |
| BENCHMARK MEDICAL, INC., | ] |
| d/b/a Champion Sports Medicine | ] |
| and Rehabilitation Center, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment, which was filed by defendant Benchmark Medical, Inc., d/b/a Champion Sports Medicine and Rehabilitation Center ("Benchmark") on June 6, 2007. (Doc. 15.)  Plaintiff Pamela Evans sued Benchmark for race discrimination with respect to her termination under 42 U.S.C. § 1981 ("§ 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). (Doc. 1.)  Benchmark has moved for summary judgment on all of Plaintiff's claims.  The issues raised in Benchmark's motion for summary judgment

have been briefed by both parties and are now ripe for consideration. Upon full consideration of the legal arguments and evidence presented by the parties, Benchmark's motion for summary judgment will be granted in all respects.

II.     Facts.[1]

Defendant Benchmark Medical, Inc., operates outpatient physical therapy clinics, and its business has grown through the acquisition of existing physical therapy practices. When Benchmark acquires an existing physical therapy practice, it seeks to retain the clinical staff—such as physical therapists—and operates the practice under its original name. Benchmark then integrates the acquired practice into its own business model, which includes the consolidation of "back office" support. Benchmark classifies "back office" functions as billing, credentialing, payroll, human resources, accounts payable, and accounts receivable.

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

On July 5, 2005, Benchmark acquired Champion Sports Medicine and Rehabilitation Center ("Champion"), a small physical therapy practice with five clinics. Champion's staff included two Senior Vice Presidents, Pamela Evans ("Plaintiff" or "Evans") and Nicole Butts ("Butts"). Evans is African-American, and Butts is Caucasian. Both women shared responsibilities for human resources, credentialing, accounts payable, billing/collection support, and other administrative duties. Both received a salary of $50,000 per year.

Evans and Butts were hired by Benchmark after its acquisition of Champion, but the Senior Vice President positions did not exist within Benchmark's business model, so their titles were changed to "Manager, Patient Services Administration." Evans and Butts continued to perform most of their previous job duties, and Benchmark paid the women their same salary of $50,000 per year.

Benchmark contends that it decided it only needed one position at the Champion office to handle the job duties performed by both Evans and Butts. Benchmark determined that the single position would be called "Market Administrative Manager." On September 19, 2005, Benchmark's

Director of Human Resources, Laurie Lampe, sent an e-mail to all Champion office personnel, including Evans, which announced the Market Administrative Manager opening. The email included an attached job description and gave an application deadline of September 23. Only Butts applied for the Market Administrative Manager position. Plaintiff does not dispute that Lampe's email was sent to her. Rather, she contends that Champion employees had not regularly used an email system to communicate, and she did not regularly check her email unless specifically instructed to do so. Evans also argues that Benchmark's computer system, including the email system, had serious problems during and after its acquisition and integration of Champion; therefore, Benchmark's method of internal job posting was not valid.

On October 6, 2005, Benchmark Area Vice President Mike Ellis met with Evans and informed her that the company had eliminated her position. When Evans inquired whether there were other positions available in the company, Ellis told her there were no positions available. Benchmark sent Plaintiff a termination letter dated October 7, 2005, with an offer of $1,923.08 severance pay in exchange for a release of liability.

Butts was not terminated. She continued to work for Benchmark and received her $50,000 salary. Butts testified she was informed that she was being hired as the Market Administration Manager in December 2005 or January 2006. A Personnel Action Form dated January 16, 2006, reflects a "Job title change" for Butts from "PSC" to "Regional Office Admin N Al." A handwritten note dated January 20, 2006, scratches through the "Regional Office Admin N Al" and substitutes "Market Administration Manager." Evans had filed her complaint of race discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2005.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.	Analysis.

　　A.	Market Administrative Manager Position.

Plaintiff contends that she was wrongfully terminated based on her race when Benchmark eliminated her position as Senior Vice President. Defendant maintains that Evans was terminated because the Senior Vice President position did not exist within Benchmark's business model and only a single person was needed to perform the job duties handled by both Butts and Evans. When Benchmark determined that the single position would be that of a "Market Administrative Manager," only Butts applied for the job, and there were no other positions available commensurate with the plaintiff's salary. Evans argues that she can show that Butts was pre-selected to fill the Market Administrative Manager position and the application and hiring process was a sham.

　　Because Plaintiff has not asserted that she has direct or statistical evidence of discrimination in support of her claim, we utilize the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). First, the plaintiff must establish a prima

facie case of discrimination. The prima facie case, once established, creates a presumption of discrimination, which the employer must rebut with legitimate, nondiscriminatory reasons for the employment action(s) at issue. "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." *Id.* at 1331.

Viewing the facts in the light most favorable to the plaintiff, Evans' termination claim constitutes a reduction-in-force ("RIF") case. She may establish a prima facie case in this action by: "(1) showing that [s]he was a member of a protected group and was adversely affected by an employment decision; (2) proving that [s]he was qualified for [her] own position or to assume another position at the time of the discharge; and (3) producing sufficient evidence from which a rational fact finder could conclude that [her] employer intended to discriminate against [her because of her race] in making the discharge decision." *Id.*

Plaintiff disputes the use of a RIF analysis and argues that her claim is a straight termination claim, for which she can establish a prima facie case by showing that she was replaced by a person outside her protected

class—namely, Butts. (Doc. 19 at 15.) However, a straight termination analysis ignores the undisputed fact that Butts began with the same job and shared practically the same duties as Evans. It is similarly undisputed that Benchmark chose to reduce the number of people performing most of those duties at the Champion office from two to one. Therefore, this is a RIF case.

Because Defendant concedes that Evans is a member of a protected group, suffered an adverse employment action, and possessed sufficient job qualifications and skills to work as a Market Administrative Manager, the question for this Court is whether there is sufficient evidence for a reasonable jury to conclude that the decision to eliminate the position held by Evans, and not Butts, was motivated by race discrimination. This last element of Plaintiff's prima facie case, however, is essentially the ultimate question of illegal discrimination in this action. Therefore, for the purposes of summary judgment only, the Court will assume that Evans has established a prima facie case with regard to her termination claim and turn to Benchmark's proffered reason(s) for its termination decision.

Defendant has submitted evidence to the Court that shows when Benchmark decided to implement a Market Administrative Manager position in the Champion office, an email announcing the opening and asking for applications was sent to the former Champion employees. Butts was the only person to apply for the position; she was qualified; and she was selected to fill the position—though she was not immediately informed of her title change and the actual transition was not effected until later in the company's integration process. Benchmark has proffered testimony that Evans was terminated because she did not apply for the Market Administrative Manager position and there were no other job openings available commensurate with her salary level.

"By presenting legitimate, nondiscriminatory reasons for [Plaintiff's] termination, [Benchmark] has rebutted the presumption of discriminatory intent." *Standard*, 161 F.3d at 1332. "In light of this, [Evans] must now create a genuine issue of material fact as to whether the reasons advanced are pretextual." *Id*. "In other words, [Plaintiff] must provide sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons were not actually the motivation for [her] discharge." *Id*. (citing

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).)  Evans "may do this (1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." *Id.* (citing *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996).

Other than showing that Evans, an African-American, was terminated and Butts, a Caucasian, was retained, Plaintiff has not presented any additional evidence suggesting her termination was a race-based decision.[2] Rather, Plaintiff attempts to show pretext by arguing that she has presented sufficient circumstantial evidence to convince a reasonable jury that Defendant's legitimate, nondiscriminatory explanation for its discharge decision should not be believed.

Evans contends that evidence suggests that Mike Ellis, Benchmark Area Vice President, pre-selected Evans for termination; therefore, Benchmark's

---

[2]And, given the particular facts of this case, where one of only two employees is terminated, Ms. Butts might be the plaintiff before this Court in a "reverse-discrimination" action if Evans had been retained and Butts' position was eliminated.

rationale that Butts was retained because she applied for the Market Administrative Manager position is false. As support, Plaintiff argues that Ellis testified that he told both Evans and Butts that *both* of their positions would be eliminated, and then changed his testimony to say that he told the women *one* position would remain. (Doc. 19 at 23-24.) Plaintiff also insists that Butts' testimony shows she was told by Ellis that *one* of the Senior Vice President positions would be eliminated due to salary, but Ellis told Evans that *both* positions would be terminated. (*Id.* at 23.)

A review of the deposition excerpts cited by the plaintiff, however, shows that the inferences made by the plaintiff are, at best, strained. Ellis' testimony was consistent on the point that he told both Evans and Butts the Senior Vice President positions were not a part of the Benchmark business model and would not be retained. And, Butts' statements do not support Plaintiff's proposition that Butts was informed only one position would be eliminated while Evans was told both would be terminated. Rather, Butts testified as follows: "From what I remember, they talked about there are [sic] still some uncertainty, they didn't know if—they knew that there were

two SVPs, and they weren't sure if they were going to be able to keep *both* due to the salary." (Butts Dep. at 41 (emphasis added).)

Evans also argues that the manner in which the Marketing Administrative Manager position was advertised suggests that the process itself was pretextual.  Plaintiff contends that because she testified the email system had serious problems and Champion employees were not accustomed to using email on a regular basis, she has shown that Butts was pre-selected for continued employment.  This contention is unreasonable.  The undisputed evidence in this case shows that the announcement regarding the Marketing Administrative Manager position was sent to multiple individuals, including Butts and Evans.  The undisputed evidence also shows that the message was received in Evans' inbox on the day it was sent, and Butts was the only person to apply.  There is no evidence that the email system was not functioning on September 19, 2005, when the job announcement was emailed.  There is no testimony before this Court that Evans' email was not functioning on September 19, 2005.  Butts testified that she received the email on the day it was sent; no one notified her in any other way that the job was open; and no one told her specifically to

check her email. (Butts Dep. at 50.) There is no evidence that suggests Benchmark even thought that "only Caucasian" employees checked, or were able to access, their work email. While the method of posting may not have been ideal for former Champion employees allegedly coming from a work environment in which they were unaccustomed to using email on an everyday basis, it was not racially discriminatory.

    B.    Patient Services Coordinator.

Plaintiff also argues that her termination from employment with Benchmark was racially discriminatory because she was not given a Patient Services Coordinator position. Evans maintains that two such positions were instead awarded to Caucasian women.

In the Eleventh Circuit, it is established that "when an employer reduces its work force for economic reasons, it incurs no duty to transfer laid-off employees to other positions within the company." *Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir. 1996) (citing *Early v. Champion Intern. Corp.*, 907 F.2d 1077, 1083 (11th Cir. 1990)). Yet, "where a job for which the plaintiff is qualified, and for which the plaintiff applies, is available at the time of termination, and the employer offers the job to an

individual outside the protected . . . group, an inference of intentional discrimination is permissible." *Id*. It is undisputed, however, that the two Caucasian women referenced by the plaintiff were hired for their respective Patient Services Coordinator positions on September 19, 2005. Evans was not terminated until October 6, 2005; therefore, these two jobs were not "available" at the time of her termination.

Moreover, the Eleventh Circuit has also held that the fact a company hires individuals outside the protected group in question for other positions is not sufficient to show pretext for an alleged discriminatory discharge. *See Beaver v. Rayonier, Inc.*, 200 F.3d 723, 728 (11th Cir. 1999). "A plaintiff must also show that the new positions were similarly situated to those that were eliminated in the RIF." *Id*. The Patient Services Coordinator position is an hourly, FLSA non-exempt position that pays approximately $20,000 to $30,000 a year. Plaintiff was terminated from a salaried, FLSA exempt, management position that paid $50,000 per year. Evans cannot show that the Patient Services Coordinator position was similarly situated to the job she held at the time of her termination.

To the extent Plaintiff argues that she has a separate failure to hire claim based on Ellis' testimony that he offered her a Patient Services Coordinator position at the time of her discharge, summary judgment will be granted because there is absolutely no evidence (or argument) before this Court that the alleged available position was offered to, or filled by, a non-African American.

V.   Conclusion.

For the reasons stated above, Defendant's motion for summary judgment will be granted in all respects.  A separate order will be entered.

Done this <u>27th</u> day of <u>September 2007</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153